**FILED**

**MAY 1 3 2008**

Clerk, U.S. District and Bankruptcy Courts

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br>450 Fifth Street, N.W.<br>Washington, DC 20549<br><br>Plaintiff,<br><br>v.<br><br>**JOHN TURCHETTA,**<br><br>Defendant. | Case: 1:08-cv-00819<br>Assigned To : Bates, John D.<br>Assign. Date : 5/13/2008<br>Description: General Civil<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("Commission") for its Complaint against Defendant John Turchetta ("Turchetta") alleges as follows:

## SUMMARY

1. This case arises out of insider trading by Turchetta and trading caused by Turchetta in the securities of U.S. Foodservice, Inc. ("USF") after he acquired material, nonpublic information concerning a proposed tender offer for USF by Royal Ahold (Koninklijke Ahold, N.V.) ("Ahold").

2. During the period February 16, 2000 through February 28, 2000, after learning from a USF vendor of Ahold's intention to acquire USF at approximately $24 to $26 per share and that the source of the information was a senior executive at USF, Turchetta purchased 30,000 shares of USF common stock at an average price of $13.19 per share. Turchetta was tipped about the pending acquisition by the USF vendor, Peter Marion, who had been tipped by Timothy J. Lee, a senior executive at USF. On March 7, 2000, Ahold and USF publicly announced Ahold's tender offer at $26 per share. Turchetta tendered his shares at the offer price

1

after the announcement and Turchetta profited from those trades in an amount of approximately $384,156.

3.  Turchetta also caused others to purchase USF, resulting in a profit to Turchetta of approximately $168,844.

4.  When he purchased USF shares and caused the purchase of USF shares by others, Turchetta knew or acted in reckless disregard of the fact that the information he possessed concerning the then-contemplated tender offer for USF was material nonpublic information that had been communicated to him directly or indirectly in breach of a duty of trust and confidence by an insider of USF.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction and venue over this action pursuant to Sections 21(e), 21A(a)(1) and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(e), 78u-1(a)(1) and 78aa].

6.  Defendant Turchetta engaged in acts, practices, and courses of business that violated Sections 10(b) and 14(e) of the Securities Exchange Act [15 U.S.C. §§ 78j(b) and 78m(e)], and Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5 and 240.14e-3], through the means or instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange.

7.  The Commission seeks a judgment permanently enjoining Turchetta from future violations and directing disgorgement of his illegal profits and profits he caused, pursuant to Section 21(d)(1) and (e) of the Exchange Act [15 U.S.C. § 78u(d)(1) and (e)]. Unless enjoined, Turchetta will continue to engage in transactions, acts, practices, and courses of business that

2

violate the provisions of the Exchange Act. The Commission also seeks an award of civil penalties, pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

## THE DEFENDANT

8.   John Turchetta, age 72, resides in Naples, Florida. Turchetta was a close friend of Peter Marion.

9.   U.S. Foodservice, Inc. was, prior to its acquisition by Ahold, a publicly traded company engaged in the food distribution business. USF was headquartered in Columbia, Maryland. The common stock of USF was registered with the Commission pursuant to Section 12(b) of the Exchange Act and listed for trading on the New York Stock Exchange.

10.   Ahold, an international retail and wholesale food provider, is a publicly held company organized in The Netherlands with securities that were registered with the Commission pursuant to Section 12(b) of the Exchange Act. Ahold's securities traded on the New York Stock Exchange and are evidenced by American Depositary Receipts.

## FACTS

11.   On September 7, 1999, the Chief Executive Officers of USF and Ahold met at a social outing and discussed opportunities, including a business combination, involving the two companies.

12.   On October 11, 1999, the Chief Executive Officers of USF and Ahold met again and discussed business opportunities, including a business combination, involving the two companies.

13.   On December 14, 1999, following additional discussions between the two companies and their representatives, USF's management informed its Board of Directors of the possibility of a business combination involving USF and Ahold. That same day, USF's Board of

Directors authorized the company's management to engage financial and legal advisors to assist the company in pursuing a possible business combination.

14. On January 21, 2000, investment bankers for the companies met to discuss valuation issues and possible synergies from a potential business combination.

15. On January 25, 2000, senior executives from the companies met to discuss an overview of their operations and potential synergies as well as potential administrative, procurement, distribution, equipment, and supplies savings, and implementation issues.

16. On February 7, 2000, after various confidential discussions among the parties, Ahold presented a preliminary proposal to USF whereby Ahold would acquire USF at a price of $26 per share. On that date, the price of USF stock closed at $12 3/8.

17. On March 6, 2000, following additional confidential discussions and related activity, USF's Board of Directors unanimously approved the terms and conditions of a merger agreement with Ahold. On March 7, 2000, the two companies publicly announced Ahold's tender offer for the outstanding shares of USF at $26 a share.

18. Throughout the discussions and negotiations concerning the contemplated acquisition, Ahold and USF took steps to ensure that the contemplated acquisition remained confidential. On or before February 7, 200, the information regarding Ahold offer was material and Ahold and USF had taken substantial steps toward a tender offer.

19. On or before February 16, 2000, Turchetta spoke with Peter Marion, who had been tipped by Timothy J. Lee, a senior executive in USF's purchasing department. Prior to their conversation, Marion had learned, directly or indirectly from Lee, that USF was the target of a contemplated but unannounced acquisition and that the acquisition price for USF stock would be approximately $24 to $26 per share. Lee told Marion that information in breach of his

duty of trust and confidence to the shareholders of USF. On or before February 16, 2000, Marion informed Turchetta, in substance and in part, that he learned from Lee that an overseas company was going to acquire USF and that the purchase price of each share of USF stock was to be approximately $24 to $26 per share. Turchetta knew at the time that neither Ahold nor USF had publicly announced Ahold's proposed acquisition. Turchetta also knew at the time, or had reason to know, that the information related to Turchetta by Marion regarding the acquisition of USF originated from Lee. This information was material and nonpublic, and Lee directly or indirectly owed a duty of trust and confidence to USF and its shareholders not to disclose it.

20. On February 16, 2000, after learning from Marion that USF was the target of a proposed acquisition and that the acquisition valued USF at approximately $24 to $26 per share, Defendant Turchetta purchased 20,000 shares of USF common stock at an average price of $11.7453. On February 28, 2000, Defendant Turchetta purchased an additional 10,000 USF shares.

21. Prior to Turchetta's purchases, the information concerning the tender offer for USF shares had not been publicly disclosed.

22. On March 7, 2000, before the market opened, Ahold and USF publicly announced Ahold's tender offer for USF at $26 per share.

23. Following the public announcement, on April 12, 2000 Turchetta tendered his 30,000 shares of USF stock at the tender price of $26.00 per share.

24. Turchetta made illegal profits of approximately $384,156 by his trading in USF stock.

25. The following chart reflects Turchetta's trading in USF:

| Date | B/S | Account Name | Shares | Price | Total |
|---|---|---|---|---|---|
| 02/16/00 | BUY | John Turchetta | 20,000 | 11.74530 | -234,906.00 |
| 02/28/00 | BUY | John Turchetta | 10,000 | 16.09380 | -160,938.00 |
| 04/12/00 | TNDR | John Turchetta | -30,000 | 26.00000 | 780,000.00 |

26. After receiving the information of the contemplated tender offer as described above, Turchetta told others that the basis for his purchase was information he obtained from Marion regarding positive business developments at USF. As a result of this and other information, Turchetta's downstream tippees purchased USF stock, resulting in profits to Turchetta of approximately $168,844.

27. Turchetta knew that his tippees purchased USF stock and that he would benefit from such trading.

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] Thereunder

28. Paragraphs 1 through 27 are realleged and incorporated herein by reference.

29. As set forth above, Turchetta purchased 30,000 shares of USF common stock after learning from Marion that USF was the target of a proposed acquisition that valued USF at approximately $24 to $26 a share. When he purchased these shares, Turchetta knew or was reckless in not knowing that the information he possessed concerning the proposed acquisition of USF was material and nonpublic and that it had been communicated to him directly or indirectly in breach of a duty of trust and confidence. When Turchetta discussed USF and the information obtained from Marion with his tippees, as alleged above, Turchetta knew or was reckless in not knowing that they would purchase USF securities and that Turchetta would benefit.

30. By reason of the foregoing, Turchetta, directly or indirectly, acting intentionally, knowingly, or recklessly, by use of the means or instrumentalities of interstate commerce or of

the mails, in connection with the purchase of securities: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon other persons.

31. By reason of the foregoing, Turchetta violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 [17 C.F.R. § 240.14e-3] Thereunder

32. Paragraphs 1 through 31 are realleged and incorporated herein by reference.

33. As set forth above, by February 1, 2000, Ahold had taken substantial steps towards commencing its tender offer for the securities of USF by, among other things, holding several confidential meetings and discussions with representatives of USF and by communicating to USF prices at which it was prepared to acquire USF.

34. Turchetta purchased USF stock, as described above, while he possessed material information relating to a tender offer for USF stock by Ahold. At the time that he purchased the USF stock, Turchetta knew or had reason to know that the information he possessed concerning the tender offer was nonpublic and had been acquired directly or indirectly from USF. When Turchetta discussed USF and the information obtained from Marion with his tippees, as alleged above, it was reasonably foreseeable to Turchetta that they would purchase USF securities.

35. By reason of the foregoing, Turchetta violated Section 14(e) of the Exchange Act [15 U.S.C. § 78(e)], and Rule 14e-3 [17 C.F.R. §240.14e-3], promulgated thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

a. Permanently enjoin Turchetta from violating Sections 10(b) and 14(e) of the Exchange Act and Rules 10b-5 and 14e-3 thereunder.

b. Order Turchetta to disgorge jointly and severally all illegal gains from his unlawful conduct, gained directly or indirectly from the transactions complained of herein, including without limitation the trading profits he made as set forth herein, together with prejudgment interest thereon.

c. Order Turchetta to pay a civil money penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

d. Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

e. Grant such other and further relief as this Court may determine to be just and appropriate.

Dated: May 13, 2008

Respectfully submitted,

Scott W. Friestad
David Frohlich
Matthew B. Greiner (DC Bar # 448480)
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
Telephone: (202) 551-4526 (Greiner)
Facsimile: (202) 772-9230 (Greiner)

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Securities and Exchange Commission       1100/

## DEFENDANTS
John Turchetta

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Collier__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Matthew B. Greiner (DC Bar # 448480)
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
(202) 551-4526

Case: 1:08-cv-00819
Assigned To : Bates, John D.
Assign. Date : 5/13/2008
Description: General Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⦿ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ⦿ E. General Civil (Other) OR ○ F. Pro Se General Civil

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

—O—

C/FJ

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊗ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Violations of 15 U.S.C. §§ 78j(b) and 78n(e) and 17 C.F.R. §§ 240.10b-5 and 240.14e-3 (Insider Trading)

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:  YES ☐  NO ⊗

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ⊗  If yes, please complete related case form.

DATE May 13, 2008    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.